UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Daniel Reppucci,
        Plaintiff

        v.                              Case No. 12-cv-316-SM
                                        Opinion No. 2013 DNH 125
Kelvin Macie, Richard A. Foote,
Cheshire County Sheriff's Office,
Cheshire County, Gary A. Phillips,
Christopher Roberts, Winchester Police
Department, Town of Winchester,
        Defendants

## O R D E R

David Reppucci was a full-time police officer for the Town of Winchester, New Hampshire, from March of 2003 until July of 2009, when he was suspended from duty. About a month later, the Winchester Board of Selectmen terminated his employment. He brings this action seeking compensatory and punitive damages, as well as costs and attorney's fees, claiming he was the victim of wrongful termination and retaliatory discharge. Additionally, he says defendants deprived him of various constitutionally protected rights.

Defendants deny any wrongdoing and move to dismiss Reppucci's claims on grounds that they are barred by the doctrine

of collateral estoppel, fail to state viable causes of action,
and are time-barred.[1]

For the reasons discussed, those motions to dismiss are
granted.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the court must "accept as true all well-pleaded facts
set out in the complaint and indulge all reasonable inferences in
favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st
Cir. 2010).  Although the complaint need only contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each
of the essential elements of a viable cause of action and
"contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face." Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (citation and internal
punctuation omitted).

_____

[1]     After defendants filed their motions to dismiss, the
court granted Reppucci's request for leave to file an amended
complaint.  Although Reppucci is no longer pursuing a common law
defamation claim, the remaining causes of action are largely the
same.  Accordingly, defendants have not supplemented their
original motions or supporting memoranda.

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." <u>Id</u>. at 570.  If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." <u>Tambone</u>, 597 F.3d at 442.

Here, in support of their motions to dismiss, defendants rely upon a written decision issued by the New Hampshire Superior Court (Cheshire County), in which the court addressed Reppucci's claims that his firing was unlawful.  They also rely upon the written decision of the New Hampshire Employment Security Appeal Tribunal, reversing Reppucci's award of unemployment benefits. Although a court must typically decide a motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to that complaint) or convert the motion into one for summary judgment, <u>see</u> Fed. R. Civ. P. 12(d), there is an exception to that general rule:

> [C]ourts have made narrow exceptions for documents the
> authenticity of which [is] not disputed by the parties;
> for official public records; for documents central to
> plaintiffs' claim; or for documents sufficiently
> referred to in the complaint.

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (citations

omitted).  See also Trans-Spec Truck Serv. v. Caterpillar Inc.,

524 F.3d 315, 321 (1st Cir. 2008); Beddall v. State St. Bank &

Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  Since Reppucci does

not dispute the authenticity of the state court's written

decision or that of the NHES Appeal Tribunal, the court may

properly consider those documents without converting defendants'

motions to dismiss into ones for summary judgment.


## Background

    The relevant factual background is largely undisputed and

set forth in detail in the Superior Court's order dated June 28,

2010.  See Reppucci v. Town of Winchester, No. 09-C-136 (N.H.

Sup. Ct. June 28, 2010) (document no. 9-3) ("Reppucci I").  In

brief, they are as follows.


    In March of 2003, Reppucci became a full-time police officer

for the Town of Winchester and, by 2006, he had been promoted to

Detective Sergeant.  In 2009, he applied for a vacant position as

Lieutenant, but he was not selected for the job.  In response, he

filed a grievance with the Chief of Police, outlining why he

believed he should have been selected for the position and
challenging the department's promotion procedures.  In that
grievance, Reppucci made reference to a confidential, internal
investigation involving another officer who had also been a
candidate for the vacant Lieutenant position.

    Town officials became concerned that Reppucci had disclosed
a copy of that grievance - including the confidential personnel
information about the other police officer - to a member of the
public.  Accordingly, the Town asked the Cheshire County
Sheriff's Department to conduct an investigation.  As part of
that investigation, on July 9, 2009, Deputy Sheriff Kelvin Macie
attempted to interview Reppucci.  At the outset, Deputy Macie
issued an "Administrative Warning," informing Reppucci that the
Sheriff's Office was conducting an investigation into allegations
that Reppucci had engaged in misconduct.  Macie informed Reppucci
that, "You are required to answer all questions fully and
truthfully, and disciplinary action including dismissal may be
taken if you refuse to answer fully and truthfully."  Reppucci I,
at 2 (citation omitted).  He also told Reppucci that, "You are
further advised that by law, any admission made by you cannot be
used against you in any subsequent criminal proceeding."  Id. at
2-3 (emphasis supplied).

The "Administrative Warning" given to Reppucci is also known as a "Garrity Warning," which the New Hampshire Supreme Court has described as follows:

> Such a warning informs the accused that the purpose of questioning is to assist in determining whether to impose administrative discipline.  Even if the accused were to disclose during questioning information indicating that he may be guilty of criminal conduct, the warning explains that neither his self-incriminating statements, nor the fruits thereof will be used against him in any criminal proceeding.  The warning further states that if the accused refuses to answer questions or fails to give truthful answers, he will be subject to disciplinary action, up to and including dismissal.

In re Waterman, 154 N.H. 437, 442 (2006) (citation and quotation marks omitted).  See generally Garrity v. New Jersey, 385 U.S. 493 (1967).

Reppucci signed the document, but refused to answer any of Macie's questions before he had the opportunity to speak with an attorney.  Macie then summoned the Chief of Police, Gary Phillips, who gave Reppucci a direct order to answer Deputy Macie's questions.  Reppucci refused.  Chief Phillips placed Reppucci on administrative leave that day (July 9, 2009).  And, although Reppucci consulted with an attorney shortly thereafter, he never answered Deputy Macie's questions.  During a subsequent security check of Reppucci's computer, the police department discovered that he had sent, to his personal e-mail account,

confidential information about internal investigations involving
other police officers.

On August 4, 2009, Reppucci received written notice that
Chief Phillips was recommending that he be fired.  He was also
told that a hearing before the Board of Selectmen had been
scheduled for August 17, at which he would have an opportunity to
present any evidence relevant to the proposed termination of his
employment.  Finally, Reppucci was advised to contact the Town's
attorney and let him know whether he would be represented by an
attorney, whether he wished to have a public hearing, whether he
needed any additional documents, and whether he had a list of
potential witnesses that he might call.

The hearing before the Board of Selectman occurred on August
17.  Reppucci revealed that he did not plan to testify and
informed the Board that his attorney was unable to attend.  He
claimed that he sought a continuance from the Town's counsel, but
counsel denied that Reppucci made any such request.  The Police
Department objected to any continuance and the Board elected to
proceed with the hearing.  The Board then heard from several
witnesses about Reppucci's disclosure of confidential information
to a member of the public (in violation of police department
regulations), his refusal to follow the Chief's direct order to

answer Deputy Macie's questions, and his having e-mailed confidential police files to his personal e-mail account.

The Board issued its Notice of Decision on August 26, concluding that the termination of Reppucci's employment was warranted. Reppucci appealed that decision to the New Hampshire Superior Court (Cheshire County), asserting that his discharge was unlawful. In his appeal, Reppucci advanced the following claims:

1. That the Town of Winchester (acting through its police department) violated his federally protected right to free speech when it initiated an investigation into his disclosure of confidential information to the public;

2. That he was the victim of retaliatory discharge, when his employment was terminated "as a result of Plaintiff's request to speak to counsel before answering questions;"

3. That the Town deprived him of his federally protected right to the assistance of counsel when he was "forced to appear at [the Board's meeting] without counsel and without the ability to present a defense" - all of which Reppucci claimed violated his constitutionally protected right to due process; and, finally,

4. That the Town deprived him of "a significant property right (continued employment under RSA 41:48) without Due Process or legal justification."

See Appeal of Termination (document no. 9-2) at 1-3. See also Reppucci I, at 7 (construing plaintiff's claims on appeal).

In a lengthy and thorough opinion, the Superior Court rejected each of Reppucci's claims and affirmed the Board's decision to terminate Reppucci's employment.  In summary, the court concluded that:

1.    The Board did not abuse its discretion, nor did it violate any of Reppucci's statutory or constitutional rights, in denying his request for a continuance;

2.    Although Reppucci had a constitutionally protected right to communicate with counsel, the Board did not violate that right;

3.    The Board did not unlawfully terminate Reppucci's employment; and

4.    The Board had a number of lawful reasons for terminating Reppucci's employment, including: Reppucci's insubordinate refusal to follow a direct order from the Chief; his transmission of e-mails containing confidential personnel information from his work computer to his personal e-mail account, in violation of Town and Police Department regulations; and his disclosure of a confidential personnel record to a member of the public.

See Reppucci I, at 9-15.  And, perhaps most importantly for purposes of this litigation, the state court concluded that "the Town did not terminate Mr. Reppucci because he engaged in a protected activity.  Instead, the Town terminated him for disclosing a confidential personnel record, in violation of town and department rules which he was obligated to follow."  Id. at 13.

In short, the court concluded that: Reppucci's termination
was entirely consistent with state law; Reppucci was not deprived
of procedural due process, his right to counsel, or his right of
free speech; and he was not fired in retaliation for having
engaged in any protected activity.  Accordingly, the court
affirmed the Board's decision terminating Reppucci's employment
as a police officer for the Town.  Id. at 15.  Reppucci did not
appeal that decision to the New Hampshire Supreme Court.

Following his discharge, Reppucci applied for, and received,
unemployment benefits.  The Town appealed that award to the New
Hampshire Employment Security Appeal Tribunal.  After a hearing
on the matter, the NHES Appeal Tribunal reached essentially the
same conclusions as the Superior Court and held that, "the
claimant's separation from employment is due to a discharge for
misconduct connected with his work."  NHES Appeal Tribunal
Decision dated January 21, 2010 (document no. 9-4) at 4.
Accordingly, the NHES Appeal Tribunal reversed Reppucci's award
of benefits and ordered him to make restitution to New Hampshire
Employment Security.  Id.  Reppucci did not appeal that decision.

On August 16, 2012 - slightly more than three years after
his suspension - Reppucci filed this action.  In his seven-count
amended complaint, he advances state common law and statutory

10

claims, as well as federal constitutional claims - all arising out of the termination of his employment.

## Discussion

I.   State Law Employment Claims.

In counts one and two of his amended complaint, Reppucci alleges that the Town and its police department unlawfully terminated his employment, in retaliation for his having engaged in protected activity.  Those claims were "inextricably intertwined" with those raised (and resolved) in Reppucci I and, therefore, the Rooker-Feldman doctrine precludes this court from reviewing them (even if it were persuaded that the state court's resolution of those issues was legally incorrect).  See Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983). See also Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 703 (1st Cir. 1995).

Moreover, even if the Rooker-Feldman doctrine did not preclude relitigation of Reppucci's employment-related claims, those claims would be barred by the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion). See generally Qualters v. Town of Winchester, 2005 DNH 14 (D.N.H. Feb. 9, 2005) (discussing the concepts of res judicata and

collateral estoppel under New Hampshire law).  The preclusive
effect of the state court's decision applies not only to the Town
of Winchester (which was a named defendant in Reppucci's appeal),
but the remaining defendants in this case as well.  See generally
Aubert v. Aubert, 129 N.H. 422, 427 (1987) ("We note that, in New
Hampshire, it is not necessary for collateral estoppel that there
be mutuality of parties.  Thus a party who, after full
litigation, has lost on an issue is barred from litigating the
issue with new parties.  [Proper application of this principal]
turns on whether or not the party against whom preclusion is
sought had a full and fair opportunity to litigate the issue.")
(citations and punctuation omitted).

    Reppucci had a full and fair opportunity to litigate his
employment related claims (based on both state law and the United
States Constitution) in the state superior court.  To the extent
he was displeased with the superior court's resolution of those
claims, his remedy was to appeal that decision to the New
Hampshire Supreme Court.  He did not.  He cannot relitigate those
claims in this forum.

    Parenthetically, the court notes that Reppucci asserts that
the state superior court's decision lacks preclusive effect in
this forum and, in support of that view, he relies upon Thomas v.

12

<u>Contoocook Valley Sch. Dist.</u>, 150 F.3d 31 (1st Cir. 1998).  That
reliance is misplaced.  <u>See</u> <u>Moron-Barradas v. Dep't of Educ. of
Comm. of Puerto Rico</u>, 488 F.3d 472, 479-80 (1st Cir. 2007)
(limiting the holding in <u>Thomas</u> to the "particularly unusual
circumstances" and unique facts presented in that case).  Here,
the state superior court directly addressed and resolved
Reppucci's claims (under both state and federal law) that he was
wrongfully terminated.  Consequently, as in <u>Moron-Barradas</u>, the
factual findings and legal conclusions of the state court
preclude him from establishing the essential elements of the
state law employment claims he advances in this case.  Defendants
are, therefore, entitled to the dismissal of those claims (counts
one and two).


II.  <u>Federal Constitutional Claims</u>.

    A.  <u>Equal Protection</u>.

    In counts three and four of his amended complaint, Reppucci
alleges that various defendants deprived him of his
constitutionally protected right to equal protection.  As
defendants point out, however, Reppucci cannot (nor does he)
allege that he is a member of a protected class.  He is, then,
necessarily asserting "class-of-one" equal protection claims,
"alleging that [he] was fired not because [he] was a member of an
identified class . . . but simply for 'arbitrary, vindictive, and

13

malicious reasons.'"  Enqquist v. Oregon Dep't of Agric., 553
U.S. 591, 595 (2008) (citation omitted).  But, the Supreme Court
has made clear that "the class-of-one theory of equal protection
has no application in the public employment context."  Id. at
607.

> We agree that, even if we accepted [plaintiff's] claim,
> it would be difficult for a plaintiff to show that
> an employment decision is arbitrary.  But this submission
> is beside the point.  The practical problem with
> allowing class-of-one claims to go forward in this
> context is not that it will be too easy for plaintiffs
> to prevail, but that governments will be forced to
> defend a multitude of such claims in the first place,
> and courts will be obliged to sort through them in a
> search for the proverbial needle in a haystack.  The
> Equal Protection Clause does not require "[t]his
> displacement of managerial discretion by judicial
> supervision."

Id. at 608-609 (quoting Garcetti v. Ceballos, 547 U.S. 410, 423
(2006)).  See also Balsamo v. Univ. Sys. of N.H., 2011 WL 4566111
*7-8, 2011 DNH 150 at 21-22 (D.N.H. Sept. 30, 2011) (addressing
and rejecting the "class-of-one" equal protection claims advanced
by a former employee of the University of New Hampshire).

        B.   Negligent Training and Supervision.

     In counts five and six of his amended complaint, Reppucci
alleges that, as a result of failures by the Town and the County
to properly train and supervise their employees, those employees
violated Reppucci's (unspecified) constitutional rights.  The

captions used to describe those counts are somewhat confusing, and suggest that Reppucci might be bringing common law negligence claims.[2]

Nevertheless, it is clear that, by invoking the provisions of 42 U.S.C. § 1983, Reppucci intends to bring a Monell-type claim against the two named municipal entities as well as the individually named defendants in their official capacities.  That

---

[2]      A "negligent training and supervision" claim - as Reppucci has captioned counts five and six of his amended complaint - is a state common law claim.  A Monell claim that his constitutional rights were violated as a result of an unconstitutional municipal custom or policy involves a higher standard of proof.  Rather than showing mere negligence, a plaintiff must demonstrate that the municipal defendants were, in essence, deliberately indifferent to the unconstitutional behavior of municipal employees.  See, e.g., Haley v. City of Boston, 657 F.3d 39, 52 (1st Cir. 2011) ("Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies.").  See generally Dye v. Wargo, 253 F.3d 296, 298-99 (7th Cir. 2001) ("In litigation under § 1983 a municipality is not vicariously liable for the constitutional torts of its employees but is answerable only for the consequences of its policies. . . .  Although Dye contends that Elkhart did not properly train either Wargo or Frei, shortcomings of this kind do not establish direct liability, because the Constitution does not require municipalities to conduct training programs.  Poor training is instead a means of showing intent for those constitutional torts where intent matters . . . .  Proof of failure to train officers could be used to demonstrate that the municipality approves (hence has a policy of) improper conduct that training could extirpate.  Such a claim in a case like this would depend on establishing that the City's policymakers knew that the police were [violating the Constitution], yet did nothing to solve the problem. ") (citations omitted).

is, Reppucci asserts that his alleged injuries were the product
of unconstitutional municipal customs or policies.  See generally
Monell v. Dep't of Soc. Services of City of New York, 436 U.S.
658 (1978).


    For the reasons discussed above, it is plain that none of
the defendants violated any of Reppucci's constitutional rights
(and, at a minimum, that he is precluded from relitigating his
claims to the contrary in this forum).  Consequently, his Monell
claims necessarily fail as a matter of law.  As the Supreme Court
has observed:

        [N]either Monell . . . nor any other of our cases
        authorizes the award of damages against a municipal
        corporation based on the actions of one of its officers
        when in fact the [court] has concluded that the officer
        inflicted no constitutional harm.  If a person has
        suffered no constitutional injury at the hands of the
        individual police officer, the fact that the
        departmental regulations might have authorized
        [unconstitutional behavior] is quite beside the point.

City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (emphasis
in original).  See also Jarrett v. Town of Yarmouth, 331 F.3d
140, 151 (1st Cir. 2003) ("Our determination that [plaintiff]
suffered no constitutional injury is dispositive of his municipal
liability claim against the Town.").

16

C. <u>Conspiracy to Violate Constitutional Rights</u>.

Finally, in count seven of his amended complaint, Reppucci
invokes the provisions of 42 U.S.C. § 1983 and alleges that
various individual defendants (both known and unknown to him)
conspired to "deny him his right to Counsel, his right to not
incriminate himself, and violate his Equal Protection Rights."
Amended complaint at para. 89.  But, as the Court of Appeals for
the First Circuit has noted, "[w]hile conspiracies may be
actionable under section 1983, it is necessary that there have
been, besides the agreement among conspirators, <u>an actual
deprivation</u> of a right secured by the Constitution and laws."
<u>Thore v. Howe</u>, 466 F.3d 173, 179 (1st Cir. 2006) (quoting
<u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 742 (1st Cir. 1980))
(emphasis supplied).[3]

Here, Reppucci cannot demonstrate an "actual deprivation" of
a constitutionally protected right.  As noted above, because he
was a government employee, his equal protection "class-of-one"
claim fails.  And, his assertion that defendants violated his

---

[3]   The Cheshire County Defendants (Foote, Macie, the
Sheriff's Office and the County itself) attempt to cast
Reppucci's conspiracy claims as being brought pursuant to 42
U.S.C. § 1985(3).  The court disagrees.  Reppucci's complaint and
his various responsive pleadings make clear that those claims are
brought pursuant to 42 U.S.C. § 1983.  Accordingly, the court has
treated them as such.

17

right to due process and/or counsel was fully and finally resolved against him in Reppucci I.

### Conclusion

For the foregoing reasons, as well as those set forth in defendants' legal memoranda (documents no. 9-1, 12-1, 17, and 24), defendants' motions to dismiss (documents no. 9 and 12) are granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 23, 2013

cc:  Brian J. S. Cullen, Esq.
     Stephen T. Martin, Esq.
     Daniel P. Schwarz, Esq.

18